No. 87-020

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

TRUCK INSURANCE EXCHANGE,

Plaintiff and Appellant,

vs

KATHY NELSON AND PATRICIA P. KENT,

Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Stillwater
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

CROWLEY, HAUGHEY, HANSON, TOOLE & DIETRICH;
Peter F. Habein, Billings, Montana

For Respondent:

ANDERSON, EDWARDS & MOLLOY; Donald W. Molloy,
Billings, Montana
McNAMER & THOMPSON; William R. McNamer, Billings,
Montana

---

Submitted: June 5, 1987

Decided: AUG 31 1987

Filed: AUG 31 1987

*Ethel M. Harrison*

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff Truck Insurance Exchange (TIE) appeals a November 5, 1986, amended judgment of the Thirteenth Judicial District, Stillwater County, granting Nelson's motion for summary judgment. We reverse.

TIE presents a single issue for our review:

Did the District Court err in concluding that a 1979 Ford Bronco was an "owned automobile" within the meaning of Dennis Jordet's insurance policy?

Dennis Jordet and his wife farm near Reedpoint, Montana. Jordet is insured under a comprehensive farm policy issued by TIE. In April of 1981, his wife's sixteen-year-old sister, Patty Kent, moved in with the Jordets and began attending high school in Columbus. In May of 1981, Kent decided to buy a 1979 Ford Bronco from Ryan Oldsmobile in Billings. Kent traded-in her personal 1975 Firebird as a down payment. However, Ryan Oldsmobile required Jordet to sign the installment sales contract because Kent was an unemployed minor.

Jordet paid the registration fees, and Kent paid him back. Kent also made the first car payment, which came due on June 28, 1981. Both Jordet and Kent are named on the owner's certificate of registration issued on June 15, 1981, and the Montana certificate of title, issued on July 8, 1981. Jordet and TIE specifically discussed and mutually agreed to not insure the Bronco under the Jordet/TIE policy. After TIE and Jordet mutually agreed to not insure the Bronco under the Jordet/TIE policy, the Bronco was insured through Guaranty National Insurance Company.

On July 10, 1981, Kent's friend, Kathy Nelson, was injured while a passenger in the Bronco driven by Kent. Guaranty National paid the limits of its policy to Nelson on

2

behalf of Kent. A separate policy issued to Kent's father also paid its limits to Nelson. Nelson later filed an action against Jordet in Silver Bow County, claiming that Jordet owned Kent's Bronco for insurance purposes and that Nelson was entitled to additional recovery under Jordet's policy.

Jordet's insurance policy, in Section II(111)(3), provides:

> With respect to the insurance afforded by this policy under COVERAGE D1 [arising out of the ownership, maintenance, or use of any automobile], the unqualified word "insured" includes (a) the named insured and, as respects the ownership, maintenance or use of any automobile covered by this policy, his relatives while residents of his household; (b) any person while using an owned automobile or a hired automobile, provided the actual use of the automobile is by the named insured or with his permission. [Emphasis added.]

The policy's definition section with respect to Coverage D1 states: "Owned automobile means an automobile owned by the named insured." Jordet is the named insured, but the Bronco is not listed among the described vehicles which are specifically insured under the TIE policy. TIE sought a declaratory judgment that Kent's Bronco was not covered within the meaning of its policy. Eventually, both parties moved for summary judgment, which the District Court granted in favor of Nelson. On November 5, 1986, the District Court concluded that the Bronco was an owned automobile under the Truck Insurance Exchange policy and that the policy provides coverage to Kent.

The Silver Bow County damage case is still pending. The Stillwater County District Court's judgment provides Nelson with supplementary coverage under Jordet's insurance policy.

3

On appeal, TIE contends that the Bronco was not owned by Jordet within the meaning of the insurance policy. TIE argues that intent is prerequisite to the existence of a contract, and is the principal guide to interpretation of its insurance policy. TIE asserts that the question of ownership under an insurance policy depends upon use, possession and control, rather than bare legal title.

Nelson contends that ownership encompasses the right of control, and therefore Jordet's failure to exercise control does not diminish legal ownership for the purposes of insurance coverage. Nelson argues that the motor vehicle statutes, Title 61, Chapter 3, MCA, create a presumption of ownership in Jordet. Nelson asserts that Jordet financed the Bronco, arranged Kent's insurance with Guaranty National, and test drove the Bronco.

Both TIE and Nelson admit that Kent and Jordet were joint owners of the Bronco, and thereby frame the central question: Does the term "owned automobile" in Jordet's insurance policy include the jointly-owned Bronco?

The interpretation of a contract is a question of law. When presented with an issue of law on appeal, we are not bound by the conclusions of the District Court but are free to draw our conclusions from the evidence presented. Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 423, 584 P.2d 1298, 1300.

Our review of this issue is guided by Safeco Ins. Co. v. Lapp (Mont. 1985), 695 P.2d 1310, 42 St.Rep. 289. In Lapp, a car dealership failed to process the title documents on a car it sold. The sole issue in Lapp was whether the dealership remained the owner within the meaning of its insurance policy. The Lapp Court noted that the motor vehicle statutes of Title 61, Chapter 3, MCA, are aimed primarily at public regulation of automobiles. The Court held that the

4

statutes are relevant but not determinative of ownership for insurance purposes. The Court emphasized contractual intent and ruled that the dealership was not the owner for insurance purposes. "Ownership for insurance purposes can be determined by the intent of the parties and the language of the insurance contract." Lapp, 695 P.2d at 1312.

In the instant case, we will not inject vehicle certification statutes into the insurance contract and thereby distort the coverage terms. Section 28-3-301, MCA, mandates that the intent of the parties shall govern the contract's interpretation: "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." We are faced with ill-defined contract terms. Where the terms are ambiguous, we may clarify them with extrinsic evidence of the parties' intentions. Section 28-2-905(2), MCA.

Those intentions are revealed in the record. Contrary to Nelson's assertions, Jordet and TIE did not contract to insure the Bronco, but affirmatively sought to avoid insuring it. They specifically discussed insuring the Bronco, but rejected the idea. In his affidavit, Jordet stated: "On the advice of our insurance agent, Patty obtained her own insurance on the car in her own name through a different company. The car was not on my policy and I did not expect or intend the policy to cover it." The record also reveals that Kent decided to purchase separate insurance. We find that the Bronco was not insured within the contemplation of the contracting parties.

In her brief, Nelson repeatedly stresses that Jordet's signature on the installment sales contract conclusively places the Bronco on the TIE policy. However, at issue in this case is the insurance contract, not the purchase

5

<u>contract</u>. The purchase of property and the insurance of property are distinct transactions.

Jordet was a solvent debtor, whose signature merely secured Kent's purchase. In her deposition, Kent testified:

> Q. Did the salesman suggest that Dennis [Jordet] sign?
>
> A. Well, either that, or I didn't get the Bronco.

The purchase contract is essentially irrelevant to the acquisition of insurance. We will not allow the purchase agreement to dictate the interpretation of the insurance agreement. We find that Jordet's signature on the installment sales contract does not establish ownership for insurance purposes.

Jordet's joint ownership was an accommodation to allow Patty Kent to finance her purchase of the Bronco. Kent paid the down payment, repaid the registration and license fee, made the first and only installment payment, purchased separate insurance with Guaranty National, held the title certificate, possessed the only keys, and drove it exclusively. Jordet and Kent agreed that the Bronco was under the sole use and control of Kent. She repeatedly testified that she considered herself the sole owner of the Bronco.

> Q. Now, when you were buying the Bronco, was it your intention to buy the car for yourself?
>
> A. Yes.
>
> Q. Were you buying it for anybody else but yourself?
>
> A. No.
>
> Q. Did you ever intend it to be purchased for Dennis' benefit?
>
> A. No.

6

Implicit in ownership is the ability to control how, when, where and by whom the vehicle will be used. Section 70-1-101, MCA, states: "The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others." Jordet never exercised any of the indicia of ownership which would be compatible with his insuring the Bronco. "[A]n insurance policy, like any other contract, must be given an interpretation which is reasonable and which is consonant with the manifest object and intent of the parties." National Farmers Union Property & Gas Co. v. Colbrezze (9th Cir. 1966), 368 F.2d 405, 411, cert. denied, (1967), 386 U.S. 991, 87 S.Ct. 1306, 18 L.Ed.2d 336.

We hold that the Bronco was not an "owned automobile" within the meaning of Jordet's policy with TIE. The amended judgment entered by the District Court on November 5, 1986, is reversed.

_____
Chief Justice

We concur:

_____

_____

_____

_____

_____

_____
Justices

Mr. Justice John C. Sheehy, dissenting:

The decision of the District Court that the Truck Insurance Exchange policy provides coverage to Patricia Kent as an insured for the accident which occurred on July 10, 1981 should be affirmed because (1), under the policy, the 1979 Ford Bronco was an "owned automobile"; and (2), the intent of Dennis Jordet was to own the automobile for otherwise Patricia Kent could not acquire it.

Dennis Jordet alone purchased a used 1979 Ford Bronco from Ryan Oldsmobile in Billings, Montana, by entering into an installment sales contract with that dealer on May 29, 1981.

Dennis Jordet purchased the 1979 Ford Bronco because on May 29, 1981, and on July 10, 1981, Patricia Kent was a minor. She was not capable of entering into a contract for the purchase of an automobile. Her name does not appear on the installment sales contract. ("All persons are capable of contracting except minors . . .." Section 28-2-201, MCA.) As the purchaser under the installment sales contract Jordet was legally liable to General Motors Acceptance Corporation, which took over the sales contract from Ryan Oldsmobile, for all of the obligations of the buyer under the installment sales contract, including a deficiency judgment, if foreclosure became necessary.

There is no doubt that the purchase of the automobile by Dennis Jordet was intended by him for the use and benefit by his minor sister-in-law, Patricia Kent. It was undoubtedly his intent that the payments would be made on the installment sales contract by Patricia, that she would have the free and unimpeded use of the automobile, and would maintain the automobile and pay for its upkeep and licensing. All of that is irrelevant in this case, because irrespective of her use

- 8 -

of the automobile, or her eventual payments, she was not in any legal sense the purchaser of the automobile. As a minor she could not even disaffirm the contract for purchase, under § 41-1-304, MCA, because her name appears nowhere on the installment sales contract.

It is further clear in the record that Dennis Jordet _intended_ to have the automobile which he had purchased for Patricia included as his scheduled automobile on his Truck Insurance Exchange policy. When he applied, he was discouraged in this by Truck's agent, because of costs and other considerations, and it was only then that he applied, and paid for, separate insurance for Patricia through Guaranty National Insurance Company.

It is idle therefore for the majority to contend that Dennis Jordet was not the owner of this automobile. Unless Ryan Oldsmobile consented, it was impossible under the law for Patricia to purchase the automobile because she was a minor. Their ineluctable intent was that Dennis Jordet would purchase and own the automobile so that Patricia Kent could enjoy its sole use.

Therefore this is not a case to which Safeco Insurance Company v. Lapp (Mont. 1985), 695 P.2d 1310, 42 St.Rep. 289 applies. In _Lapp_, there is no doubt the parties intended that Lapp should own the automobile. In this case the parties intended that Jordet should own the automobile. In _Lapp_, the intent of the parties on ownership excluded Lapp from coverage. In this case the intent of the parties on ownership brings coverage under the Truck Insurance Exchange policy.

Ownership of the vehicle is the only issue in this case. If Dennis Jordet is the owner of the vehicle, under the retail installment sales contract, and also because of the certificate of title and certificate of registration, then

the terms of Truck's policy apply. The policy was written by Truck Insurance Exchange and needs no interpretation. The pertinent provisions of the policy which apply coverage in this case to Dennis Jordet as the owner of the 1979 Ford Bronco are these:

Section II - Liability and Medical Coverage

Insuring Agreements

(1) Coverages

The company agrees

Coverages D(1) and D(2) - Automobile Liability and Farm Liability Insurance

to pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of bodily injury to any person and damage to property:

D(1) Arising out of the ownership, maintenance, or use of any automobile.

* * *

(3) With respect to the insurance afforded by this policy under COVERAGE D(1), the unqualified word "insured" includes (a) the named insured and, as respects the ownership, maintenance or use of any automobile covered by this policy, his relatives while residents of his household;

* * *

(1) Owned automobile means an automobile owned by the named insured; (Emphasis added.)

At the time of the purchase and of the accident in this case, Patricia Kent was a relative, a sister-in-law, and a resident in the same household as the insured Dennis Jordet. Therefore she qualifies as an "insured" under the policy.

It makes no difference that the Ford Bronco is not listed on the schedule of vehicles attached to the policy.

- 10 -

The language of the policy controls. In U.S.F. & G. v. Newman (9th Cir. 1981), 656 F.2d 457, 459, it was held:

> The policy extends liability coverage to "any . . . person while using an <u>owned</u> automobile." "Owned automobile" is defined in the policy as an "automobile owned by the <u>Named Insured</u>" and contains no limitation to vehicles listed on the policy. The "named insured" in Casualty 75 is the partnership. The effect of these provisions is to extend liability coverage to the operation of vehicles owned by the partnership, whether listed on the schedule or not.

In addition, the 1979 Ford Bronco was an "automobile owned by the named insured" under the statutes of this State. Section 61-3-105, MCA, provides that a person appearing under the public records as the registrant of any motor vehicle is prima facie deemed the owner thereof. Dennis Jordet applied to the State's Registrar of Motor Vehicles for a certificate of his ownership, and a certificate of ownership (title) was issued by that official showing Dennis Jordet and Patricia Kent to be the owners of the automobile in question. Section 61-3-202, MCA. When the names and addresses of more than one owner who are members of the same family are listed on the certificate of ownership, joint ownership with right of survivorship is presumed. Section 61-3-202(3), MCA. As an owner of the automobile, he also applied for a registration and license. Section 61-3-303, MCA.

This case involves the sale of a used motor vehicle by an auto dealer. When an auto dealer in Montana acquires a used car, he picks up from the former owner the certificate of title, assigned in blank. When the used car dealer sells the used car, it is his duty to forward to the county treasurer within four working days the assigned certificate of ownership and certificate of registration, together with the application for title by the new owner. Section 61-4-111, MCA, provides that "upon compliance by the dealer

with the requirements set forth in this section, title of said motor vehicle shall be deemed to have passed to the purchaser as of <u>the</u> <u>date</u> <u>of</u> <u>delivery</u> of the vehicle to him by the dealer, and the dealer shall have no further liability or responsibility with respect to the processing of registration."

In this case, Ryan Oldsmobile had performed the necessary functions and accordingly, under § 61-4-111(2), MCA, title to the 1979 Ford Bronco passed to Dennis Jordet and Patricia Kent as of the date of delivery by Ryan Oldsmobile.

Under the facts of this case therefore, not only did Patricia Kent and Dennis Jordet <u>intend</u> that Dennis Jordet be an owner of the automobile, but under the statutes of Montana, he <u>was</u> an owner of the automobile.

Truck maintains that Jordet was only an "accommodation owner." There is no such ownership estate for vehicles in Montana law; it would be irrelevant under the policy, because he was still an owner.

Kathy Nelson is a third party claimant against Patricia Kent because of an accident which occurred to the 1979 Ford Bronco insured by Truck at the time. Kathy's right to insured coverage of her claim against Patricia Kent vested at the time of the accident. McLane v. Farmers Insurance Exchange (1967), 150 Mont. 116, 432 P.2d 98. The self-serving statements elicited after the accident from Dennis Jordet, Chris Jordet and Patricia Kent that Patricia had the sole use of the automobile following its purchase fail to overcome this fact: Dennis Jordet was an owner of the automobile when Kathy Nelson was injured. The policy coverage applies.

_____
Justice

- 12 -

I join in the dissent of Mr. Justice John C. Sheehy.

_____
Justice